# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIEL AUGUST                                    CIVIL ACTION

VERSUS                                           NO. 15-4444

N. BURL CAIN                                     SECTION: "J"(1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Daniel August, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On March 20, 1996, he was convicted of first degree murder under Louisiana law.[1]  On April 17, 1996, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On September 16, 1998, the Louisiana

---

[1] State Rec., Vol. 1 of 4, minute entry dated March 20, 1996.
[2] State Rec., Vol. 1 of 4, minute entry dated April 17, 1996.

Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on January 15, 1999.[4]

On June 23, 2004, petitioner, through counsel, filed an application for post-conviction relief.[5]  On May 27, 2005, that application was denied.[6]  No further review was sought with respect to that application.

On or about June 12, 2009, petitioner then filed a motion for DNA testing with the state district court,[7] and he later supplemented that motion in February of 2011.[8]  The court denied relief on July 24, 2013.[9]  His related writ applications were thereafter likewise denied by the Louisiana Fourth Circuit Court of Appeal on October 30, 2013,[10] and by the Louisiana Supreme Court on October 10, 2014.[11]

On September 10, 2015, petitioner filed the instant federal application for habeas corpus relief.[12]  The state has filed a response arguing that petitioner's application is untimely.[13]  The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[3] State v. August, 719 So.2d 536 (La. App. 4th Cir. 1998); State Rec., Vol. 3 of 4.
[4] State v. August, 736 So.2d 206 (La. 1999).
[5] The state court record furnished to this court does not include a copy of that motion.  However, petitioner alleges that it was filed on June 23, 2004.  Rec. Doc. 1, p. 3.
[6] State Rec., Vol. 1 of 4, minute entry dated May 27, 2005.
[7] State Rec., Vol. 4 of 4.
[8] State Rec., Vol. 4 of 4.
[9] State Rec., Vol. 4 of 4.
[10] State v. August, No. 2013-K-1306 (La. App 4th Cir. Oct. 30, 2013); State Rec., Vol. 4 of 4.
[11] State v. August, 150 So.3d 892 (La. 2014); State Rec., Vol. 4 of 4.
[12] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has declared under penalty of perjury that his application was placed in the prison mailing system on September 10, 2015.  Rec. Doc. 1, p. 7.
[13] Rec. Doc. 11.

underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).[14]  On that point, the

United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  *When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.*  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

As noted, the Louisiana Supreme Court denied relief on direct review in the instant case

on January 15, 1999; therefore, petitioner's state criminal judgment became final for AEDPA

purposes ninety days later on April 15, 1999.  Accordingly, the statute of limitations commenced

on that date and then expired on April 17, 2000,[15] unless that deadline was extended by tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA

expressly provides:  "The time during which a properly filed application for State post-conviction

or other collateral review with respect to the pertinent judgment or claim is pending shall not be

counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  However,

---

[14] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

[15] The Court is aware that, because 2000 was a leap year, the three-hundred-sixty-fifth day of petitioner's one-year period was April 14, 2000.  However, courts have held that it is the "anniversary date" on which the AEDPA's statute of limitations expires, regardless of the existence of an additional day due to a leap year.  See, e.g., United States v. Hurst, 322 F.3d 1256, 1261-62 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000); Zeno v. Louisiana, Civ. Action No. 06-4096, 2009 WL 3190461, at *3 n.17 (E.D. La. Sept. 30, 2009).  Moreover, because the "anniversary date" of April 15, 2000, fell on a Saturday, the federal limitations period here was extended through the following Monday, April 17, 2000.  See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

petitioner had no such applications pending before the state courts during the applicable one-year period. Therefore, he clearly is not entitled to statutory tolling.[16]

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court notes that petitioner alleges that he is actually innocent,[17] and the Court further recognizes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). However, the Supreme Court took care to note: "We caution ... that tenable

---

[16] Although petitioner filed state post-conviction applications in 2004, 2009, and 2011, applications filed *after* the expiration of the federal statute of limitations have no bearing on the timeliness of a federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler, 533 F.3d at 318.
[17] See Rec. Doc. 1-1, p. 21.

actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  As the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred."  Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence presented at trial and on which petitioner's conviction is based.  That evidence is recounted in the Louisiana Fourth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> On September 3, 1992, homicide Detective Louis Gaydosh responded to a call of shots fired at 1230 South Telemachus Street.  When he arrived on the scene he observed the victim, Floyd Marbley, lying in large pool of blood and he appeared to be dead.  The paramedics arrived shortly thereafter and transported the victim to the hospital where he was pronounced dead at 2:15 a.m.
>
> Elaine Williams, girl friend of the victim, Floyd Marbley, testified that in September of 1992, she lived at 1230 South Telemachus, Apartment 3, with Marbley.  On September 2, 1992, Williams while on her way home, she saw Floyd Marbley standing outside a store on Erato Street.  She arrived home at approximately 11:30 p.m.  Soon thereafter, she was awakened by a telephone call from defendant August who asked for Marbley.  A few minutes later, she heard Marbley knocking at the front door.  When she opened the door, Marbley was with [Daniel] August and [Veron] Johnson.  The defendants pushed Marbley inside the house.  Johnson was holding a .357 caliber gun on Marbley.  The defendants told Williams and Marbley to get on the bed.  August then took Marbley's AK47.  August asked Marbley if he had any money.  After Marbley told August he did not have any money Williams gave Johnson all the money she had in her purse, eleven

dollars.  August told Johnson to take Williams to the bank.  As she and Johnson left the apartment, Johnson stated he did not want to take the Tercel as it was a rental car.  Williams drove her Mazda 626 to the bank while Johnson sat in the passenger seat pointing a .357 gun at her.  Williams was unable to obtain any money as there were insufficient funds in her account.  Additionally, there were photographs made from videotapes recorded at the automatic teller machine located at the Claiborne Street branch of First National Bank of Commerce, taken at 12:54 a.m. and 1:01 a.m. on September 3, 1992, which were presented at trial.  Both defendant Johnson and Elaine Williams are seen in the photos using the ATM machine.

When Williams and Johnson returned to the house, the defendants told Marbley to call Derrick Tapp and have Tapp come to the apartment.  When Tapp came into the apartment, the defendants threatened to kill Tapp if he did not tell them where the money was.  Tapp gave the defendants the few dollars he had.  A short while later, they heard a car horn blow.  When Marbley looked outside, he saw his friend, Carl Brown, who was also known as "Superstar."  Johnson told Marbley to go outside and have Brown come inside.  When Johnson realized he sent Marbley outside by himself, Johnson went after Marbley.  Williams heard two to three gunshots.  Thereafter, August ran outside.  Williams then heard rapid gunfire.  Tapp was still in the house with her.  After August left, Williams called the police and locked her doors.  She did not open her door until the police arrived.  When she went outside, she saw Marbley lying on the ground.  He had been shot in the legs and shortly thereafter died.

Homicide Detective Louis Berard spoke with Elaine Williams and Derrick Tapp at police headquarters where they identified both August and Johnson in photographic lineups.  Williams had previously made a physical identification of Johnson in the emergency room at Hotel Dieu Hospital on the morning of the shooting, where she had been taken by Detective Wayne Rumore.  Johnson went to the hospital the night of the shooting.  Dr. Martin Hale, an emergency room physician, treated Johnson for a gunshot wound to the lower right leg.  The defendant also had multiple abrasions and contusions to his body consistent with fighting.  Officer Rumore then arrested defendant Johnson and obtained the defendant's clothing and a black Cascio watch, which the defendant was wearing.

Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner's Office, performed an autopsy on the victim, Floyd Marbley.  The cause of death was seven gunshot wounds and multiple fragments wounds in the legs and left wrist and abrasions and contusions were found consistent with fighting.  Dr. McGarry opined that the weapon used to shoot the victim was more than two feet from the victim and that the victim's injuries were consistent with a rapid firing weapon.

Officer Luther Randall, a crime scene technician with the Crime Lab, took photographs of the victim's apartment, a Toyota Tercel belonging to Lee Lanier, and Williams' Mazda 626.  The officer also collected shell casings and blood samples from the scene.  Randall found fourteen spent casings.  He obtained twelve partial latent fingerprints from the Toyota Tercel, three of which were identified as Veron Johnson's fingerprints.

Officer Kenneth Leary, Jr., a firearms examiner, testified that the fourteen casings found on the scene were part of ammunition used in an AK47, a semi-automatic weapon.  The officer further stated that all fourteen casings were fired from the same weapon.

Evidence at trial was heard recounting the events which had transpired over a one and one half hour span between 11:30 p.m. on September 2, 1992 and 2:15 a.m. on September 3, 1992.  They began with the stealing of the Tercel, cash and a black Cascio watch and ended with the victim Floyd Marbley being pronounced dead.

At approximately 12:15 a.m. on September 3, 1992, Lee Lanier testified that he had returned home from work.  As he approached his house, he noticed two young Afro-American men walking up his driveway.  One of the men was holding a gun.  The men requested Lanier's money, black Cascio watch and car keys.  One of the men attempted to start Lanier's car, a 1986 Toyota Tercel, but was unable to do so.  Lanier told him to push in the clutch.  Once the two suspects started the vehicle, they left the scene.  Lanier identified defendant August in a photographic lineup and at trial as one of the perpetrators.  Lanier was unable to identify the second perpetrator.  Lanier's Tercel was located at the scene of the murder and his Cascio watch was found on the defendant Johnson when he was arrested at the hospital.[18]

The foregoing "old evidence" evidence is obviously compelling evidence of guilt, and petitioner therefore faces a daunting burden to present a credible "actual innocence" claim.  Specifically, the United States Supreme Court has explained:  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added).

Here, rather than presenting "new evidence," petitioner primarily reargues the believability of the state's evidence and theory at trial.  What little new evidence he does identify (such as a

---

[18] State v. August, 719 So.2d 536, 538-40 (La. App. 4th Cir. 1998); State Rec., Vol. 3 of 4.

supplemental narrative and crime scene report of Detective Louis Berard and a police diagram of the crime scene) is obviously not of the same caliber of the types of evidence referenced in <u>Schlup</u> and certainly does not cast this case in such a different light that "*no* juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." <u>McQuiggin</u>, 133 S. Ct. at 1928 (emphasis added). Instead, petitioner's argument is primarily founded on evidence concerning the "blood trail" at the scene and what that evidence, properly explained, would have meant to the jury.

The undersigned finds that the evidence on petitioner relies simply is not of the critical importance he seems to believe. The bottom line is this: Eyewitness evidence established that Johnson and petitioner were engaged in the commission of an armed robbery at Marbley's apartment; during the course of that robbery, Marbley left the apartment; Johnson and petitioner, both armed with guns, followed shortly behind Marbley; rapid gunfire was then heard; and Marbley was found dead of gunshot wounds. No evidence offered by petitioner casts any legitimate doubt on the jury's finding that he was guilty of first degree murder in violation of La. Rev. Stat. Ann. 14:30. Therefore, petitioner has not made a credible claim of actual innocence under <u>McQuiggin</u>.

For all of the foregoing reasons, it is clear that petitioner's deadline for seeking federal habeas corpus relief was April 17, 2000. Because the instant federal application was not filed until September 10, 2015, it is untimely.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Daniel August be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this twenty-second day of March, 2016.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.